AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
2870 ARROWSMITH DRIVE, REYNOLDSBURG, OHIO ) Case No. 2:22-mj-771
43068 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

2870 ARROWSMITH DRIVE, REYNOLDSBURG, OHIO 43068

located in the __Southern__ District of __Ohio__, there is now concealed *(identify the person or describe the property to be seized)*:

A quantity of a controlled substance and/or proceeds that are evidence thereof, and/or contraband, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute a controlled substance |
| 21 U.S.C. 843(b) | Prohibited use of a communication center (U.S. Mail) |
| 21 U.S.C. 846 | Conspiracy to possess with intent to distribute a controlled substance |

The application is based on these facts:
As set forth in the attached Affidavit of Postal Inspector Justin D. Koble.

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Justin D Koble, US Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: __12/5/2022__

*Judge's signature*

City and state: __Columbus, Ohio__ Chelsey M Vascura, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| APPLICATION AND AFFIDAVIT OF THE ) | |
| UNITED STATES OF AMERICA FOR A ) | Magistrate No. 2:22-mj-771 |
| SEARCH WARRANT OF THE ADDRESS ) | |
| 2870 ARROWSMITH DRIVE ) | [UNDER SEAL] |
| REYNOLDSBURG, OHIO 43068 ) | |

I, Justin D Koble, Postal Inspector with The United States Postal Inspection Service, being duly sworn, depose and say:

1. I am a United States Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed since July 2014. I am currently assigned to the Narcotics and Money Laundering Team at the USPIS's Columbus, Ohio field office. In this capacity, I am responsible for investigating the illegal use of the United States Mails for the purpose of transporting controlled substances such as methamphetamine, heroin, fentanyl, fentanyl-related analogs, cocaine, and other controlled substances, in violation of, among other statutes, Title 21, United States Code, § 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled substance), 843(b) (unlawful use of a communication facility in the commission of a crime), and 846 (drug conspiracy). In addition, I am responsible for investigating possible violations of Title 18, United States Code, § 1956 and 1957 (money laundering).

2. I have been involved in the investigation and discovery of drug contraband and drug proceeds on numerous occasions. I have personally been the affiant for search warrants that have resulted in the discovery of controlled substances and drug proceeds. My current assignment to the Columbus Processing and Distribution Center (P&DC) involves investigating the use of the U.S. Mails by drug traffickers, in which established drug package profiles, surveillance, and drug detection dogs, among other investigative tools, are utilized.

3. I have knowledge of the facts set forth in this Affidavit based on my own participation in this investigation as well as other sources identified herein.

4. In a substantial number of residential search warrants executed in connection with the drug investigations in which I and fellow Postal Inspectors, HSI Special Agents, DEA Special Agents and Central Ohio HIDTA Task Force Officers, have been involved, the following kinds of drug-

related evidence have typically been recovered from the residences and other locations utilized by drug-traffickers:

- Controlled substances, such as marijuana, heroin, fentanyl, methamphetamine, and powder cocaine.
- Paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, microwave ovens, heat-sealing devices, and dilutants such as mannitol.
- Books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances.
- Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances.
- Cash, currency, and records relating to controlled substances income and expenditures of money and wealth, for example: money orders, (Western Union, USPS, MoneyGram), wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, check registers, and cryptocurrency cold storage devices, as well as precious metals such as gold and silver, and precious gems such as diamonds.
- Documents indicating travel in interstate and foreign commerce such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, telephone bills and rental car agreements.
- Electronic storage devices, such as hard drives, USB drives, or digital video recording devices (DVRs).
- Mobile electronic communication devices, such as cellular telephones, electronic storage devices, such as GPS devices and portable media players, and other such mobile electronic devices that store data, as well as the content therein.
- Firearms and other dangerous weapons; and
- Photographs, in particular, photographs of co-conspirators, assets, and/or drugs.

5. In addition, during the course of such searches, I and other agents have also found items of personal property that tend to identify the person(s) in the TARGET LOCATION as well as the occupancy, control, or ownership of the subject TARGET LOCATION. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, utility and

2

telephone bills, statements, identification documents, and keys to safe deposit boxes and storage facilities.

6. Based upon my training and experience, as well as the knowledge and experience of other agents and police officers involved in this investigation, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug-related paraphernalia (as described above) in their residence or business under their control. Further, it is generally a common practice for drug traffickers to maintain in their residence or business under their control, records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed. Such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them readily available in order to efficiently conduct their drug trafficking business.

7. Based upon my training and experience, I also am aware that it is a generally common practice for traffickers to conceal at their residence or business under their control, large sums of money which represents the proceeds of drug sales or money to be used to purchase additional controlled substances. The large amounts of U.S. currency are necessary to maintain and finance their ongoing drug distribution business. In this connection and context, drug traffickers typically make use of wire transfers, cashier's checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in these TARGET LOCATION.

8. Based upon my training and experience, drug traffickers commonly have in their possession, that is, on their person, at their residence or other locations in their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. I also am aware that, typically, drug traffickers possess these firearms and other dangerous weapons to protect their profits, supply of drugs, and themselves from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

9. Further, I am aware that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and

3

distribution of controlled substances; furthermore, I know that the aforementioned books, records, receipts, notes, ledgers, etc. are generally maintained where the traffickers have easy and ready access to them, including in their residences, automobiles, or other locations under their control.

10. Further, I am aware that persons involved in drug trafficking conceal in their residences, automobiles, or other locations under their control, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, as well as evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from drug trafficking activities.

11. When drug traffickers amass proceeds from the sale of drugs, they often attempt to legitimize these profits, or otherwise conceal them from discovery by law enforcement officers. To accomplish these goals, drug traffickers often use different techniques, including but not limited to foreign and domestic banks and their attendant services; securities; cashier's checks; money drafts; letters of credit; brokerage houses; the purchase of real estate; as well as shell corporations and business fronts to conceal the true ownership and illegal source of the proceeds.

12. Further, I am aware drug traffickers commonly maintain books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization. Also, drug traffickers take or cause to be taken photographs of them, their associates, their property, and their product, and these photographs are usually maintained in their possession or residence.

13. Further, I am aware drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs; and the paraphernalia would include, but are not limited to scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution. These items are necessary for the drug trafficker to carry on their drug distribution operation.

14. Further, I am aware that drug traffickers often operate under assumed names, street names, or nicknames in order to conceal their true identities from law enforcement officers, and in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names. Also, they maintain documents of their false identities in their residences and automobiles, together with evidence of their true identities.

15. I have knowledge that drug traffickers commonly conceal their activities from members of the public by transacting their business in a convert manner and frequently conducting their business during the nighttime hours when darkness helps conceal their activities. Further, it is highly unusual for individuals engaged in drug trafficking activities to associate in their businesses or social activities with others not engaged in the same drug trafficking activities.

4

16. I have knowledge that it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence for their ready access and to conceal them from law enforcement authorities.
17. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following:
    - My own involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described.
    - My involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations.
    - Discussion with other members of the USPIS and law enforcement officers, both about the facts of this case in particular and about trafficking in general.
    - The information contained in this Affidavit is based on my personal observation; my training, experience, and knowledge; my review of documents and evidence obtained during the investigation; interviews of cooperating individuals; and information obtained from investigators of the USPIS and Central Ohio HIDTA Task Force Officers.
18. I make this Affidavit in support of an application for the issuance of an anticipatory search warrant for the TARGET LOCATION located at 2870 Arrowsmith Drive, Reynoldsburg, Ohio 43068, (the "TARGET LOCATION"). The TARGET LOCATION is on the southeast corner of the intersection of Arrowsmith Drive and Richfield Drive. The TARGET LOCATION is described as a split-level single-family residence. The exterior of the TARGET LOCATION is tan siding with white trim. The numbers "2870" are printed vertically in black to the right of the front door when viewed from Arrowsmith Drive. The numbers "2870" are also printed on the curb directly in front of the TARGET LOCATION as well as on the mailbox adjacent to the driveway.
19. The following "Target Offenses" are the subject of this investigation:
    A. Title 21 United States Code § 841(a) makes it a crime to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
    B. It is unlawful for any person knowingly or intentionally to use any communication facility in committing or causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this

5

chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For the purpose of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication, Title 21 USC § 843(b).

C. Title 21 United States Code § 846 makes it a crime to attempt or conspire to commit any offense defined in Title 21 United States Code § 841.

## Probable Cause

20. On or about December 5, 2022, USPIS interdiction personnel in Columbus, Ohio interdicted the United States Priority Mail parcel bearing United States Postal Service ("USPS") tracking number 9505 5138 2071 2337 10 (hereinafter referred to as the "SUBJECT PARCEL"), upon arrival at the USPS Reynoldsburg Main Post Office, 7185 East Main Street, Reynoldsburg, Ohio 43068. The SUBJECT PARCEL is addressed to "J. Horton, 2870 Arrowsmith. DR, Reynoldsburg, OH 43068", the TARGET LOCATION, with a return address of "Tint & Audio Experts, 11545 Artesia Blvd, Artesia, Ca 90701". The SUBJECT PARCEL is a white, USPS Priority Mail size medium flat rate box measuring approximately 12" x 3 1/2" x 14 1/8" and weighing approximately 6 pounds, 15.6 ounces. The SUBJECT PARCEL was mailed from the USPS Bellflower Main Post Office, 9835 Flower Street, Bellflower, California 90706 on or about December 3, 2022, at approximately 1:18pm PST. The $17.05 in United States postage affixed to the SUBJECT PARCEL was paid for using cash.

21. On December 5, 2022, a federal search warrant authorizing the search and seizure of the SUBJECT PARCEL was signed in the Southern District of Ohio by the honorable Chelsey M. Vascura, United States Magistrate Judge. The search warrant was executed the same day.

22. The SUBJECT PARCEL was found to contain approximately 2,903 grams of a white crystalline substance which field tested positive for methamphetamine.

23. The suspected methamphetamine was packaged in vacuum sealed bags weighing approximately 1 pound each. The vacuum sealed bags were each placed into a Ziploc style bag and wrapped in several layers of cellophane. Based on my training and experience, this manner of packaging is consistent with the distribution of bulk crystal methamphetamine.

24. I believe, based on my training and experience, that the person who sent the SUBJECT PARCEL attempted to disguise the nature of its contents from drug detecting canines by attempting to mask or block the odor of methamphetamine. The inclusion of innocuous objects, as well as wrapping

6

the methamphetamine in multiple layers of plastic packaging material, is indicative of someone intending to send illicit controlled substances undetected.

25. I further believe, based on my training and experience, and from speaking with fellow law enforcement officers with experience investigating Title 21 offenses, that this amount of methamphetamine -2,903 grams- is considered a very large amount which is indicative of an intent to sell or distribute.   Based on my training and experience, it is unlikely that this amount of methamphetamine is intended for personal consumption.

26. Agents involved in this investigation will fill the SUBJECT PARCEL with "sham" controlled substances, meaning the agents will remove the narcotics and replace it with rock salt (which is similar in appearance to methamphetamine, but is not a controlled substance), leaving only a representative sample. Thereafter agents will attempt to deliver the SUBJECT PARCEL at the TARGET LOCATION and then serve this search warrant.  An agent will act in an undercover capacity as a USPS Letter Carrier and will attempt to make contact with an occupant at the TARGET LOCATION.

27. If no one is home when agents attempt to deliver the SUBJECT PARCEL, agents will leave the SUBJECT PARCEL at the front door, porch, or other location at the TARGET LOCATION where parcels would customarily be delivered.

28. CONDITION PRECEDENT: This search warrant will only be served after the SUBJECT PARCEL has been delivered to and received by someone at the TARGET LOCATION.  At that time, and not before, your affiant and other law enforcement personnel will execute this search warrant.  In no event will the search warrant be executed if the SUBJECT PARCEL is not taken into the TARGET LOCATION.

## Conclusion

29. If granted, your Affiant believes that within 2870 Arrowsmith Drive, Reynoldsburg, Ohio 43068, will be the items described in Attachment B. Specifically, there will be evidence of illegal possession and distribution of methamphetamine; evidence of the illegal trafficking of methamphetamine utilizing the United States Postal Service, and evidence of drug proceeds. All of which constitutes instrumentalities, fruits, and evidence of violations of 21 United States Code 841 and 843(b).

30. The above information is true and correct to the best of my knowledge, information and belief.

Justin D. Koble
US Postal Inspector

Subscribed and sworn to before me
this __5__ th day of December, 2022.

Chelsey M. Vascura
United States Magistrate Judge

Attachment A

Residential TARGET LOCATION Located at 2870 Arrowsmith Drive, Reynoldsburg, Ohio 43068

## **DECRIPTION OF TARGET LOCATION TO BE SEARCHED**

The TARGET LOCATION is on the southeast corner of the intersection of Arrowsmith Drive and Richfield Drive. The TARGET LOCATION is described as a split-level single-family residence. The exterior of the TARGET LOCATION is tan siding with white trim. The numbers "2870" are printed vertically to the right of the front door when viewed from Arrowsmith Drive. The numbers "2870" are also printed on the curb directly in front of the TARGET LOCATION as well as on the mailbox adjacent to the driveway.



9

Attachment B

**<u>DESCRIPTION OF ITEMS TO BE SEIZED</u>**

Based on the foregoing information, there is probable cause to believe that at 2870 Arrowsmith Drive, Reynoldsburg, Ohio 43068, there may be found:

a. Drug packaging, paraphernalia and equipment, and quantities of residues of controlled substances, including cocaine, fentanyl, and methamphetamine;

b. Books, records and information, receipts, notes, ledgers, and/or papers relating to the mailing, transportation, ordering, purchasing, and/or distribution of controlled substances;

c. Books, records and information, receipts, bank statements and records, money drafts, letters of credit, money orders and/or cashier's checks, and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money made from engaging in illegal drug trafficking;

d. Records and information from computers, cell phones, and other electronic devices – the term "records and information", as used in this affidavit, includes all items of evidence, in whatever form and by whatever means they may have been created or stored, including in any electrical, electronic, or magnetic forms, such as information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROMs, optical disks, backup tapes, printer buffers, smart cards, USB storage devices, memory devices, digital video recorders (DVR), computers, smart phones, and personal digital assistants, as well as printouts or readouts from any magnetic storage device, in any handmade form (such as writing, drawing, painting), and in any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, and photocopies);

e. Financial proceeds of unlawful trafficking in controlled substances, including but not limited to, United States currency, financial instruments, precious metals, jewelry and/or other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from illegal drug trafficking activities;

f. Photographs of persons suspected of unlawful drug trafficking, and of assets, and or controlled substances, and of drug paraphernalia associated with same;

g. Indicia of occupancy, residency, rental, usage and/or ownership of the TARGET LOCATION described above, as well as the rental, usage and/or ownership of any vehicle engaged in the trafficking of controlled substances, including but not limited to, rental agreements, titles, telephone bills, utility bills, vehicle registrations, canceled envelopes, safety deposit box keys, safe keys, and mailbox keys, as well as keys to the actual residence and/or TARGET LOCATION, and/or vehicles;

h. Records of telephone numbers, address books, or papers which reflect names, addresses and/or telephone numbers of associated and co-conspirators involved directly and indirectly in the trafficking of controlled substances, and/or associates who have a monetary consideration and/or interest in the illegal trafficking of controlled substances;

i. Any and all firearms possessed or utilized in the furtherance of the illegal acquisition, possession, sale, trade, distribution, storing, secreting, transfer, transportation, and/or illegal trafficking of drugs. And any and all firearms uses of intended for use to facilitate a violation of Title 21, United States Code, Sections 841 and 846;

j. Mail matter (all classes), Priority Mail and Priority Mail Express parcels and packaging, FedEx and UPS parcels and packaging, and other correspondence which reflect names and addresses of suspected co-conspirators in the trafficking and mailing of drugs and cash proceeds;

k. Any and all vehicles present, which may have been utilized in the illegal sale, acquisition, trade, transfer, delivery, storing, secreting, transporting and/or trafficking of illegally possessed controlled substances, all of which are evidence, fruits, and instrumentalities of violations of federal drug and currency structuring laws.